Good morning, everyone. This is the time for argument on YS Garments v. Continental Casualty Company. And before we begin, I just want to really thank Judge Cook for visiting with us and helping us out on several cases a few months ago and for returning to help us out with this as well. All right, we will hear from the appellant. YS Garments doing business is next level apparel. Good morning or afternoon in some cases. I'd like to begin by addressing what I believe to be the most significant issue in this case. It was certainly the issue that received the most attention on the briefing. Before I begin, I would like to note that I'm going to reserve five minutes for rebuttal, and I will keep my eye on the clock. Please do because I actually can't see the clock. So I will ask that Ms. Cook respond. We will. The issue that I believe is dispositive of this appeal is whether or not the district court correctly concluded that next level's recovery could be limited under any factual or legal theory to $200,000. And I'm not going to address at the moment what the district court did because I know this court is reviewing it de novo, and at least on one of the theories that the district court ruled on, the waiver theory, Continental did not even bother to defend it. Instead, I'd like to turn my attention to the arguments that Continental. Ms. Briggs, before you proceed, I'm wondering if you could confirm whether or not the $200,000 actually has changed hands. So, following the district court's ruling, Continental did send a $200,000 check to next level, which next level did not catch. So, okay, so nobody's negotiated the $200,000 is regarding the $200,000 limitation are as follows. First, Continental argues that there's actually no evidence that or no admissible evidence that it gave prior written consent. Secondarily, it argues that to the extent there is evidence that it was not prior consent or written consent. And then lastly, Continental argues that its consent was in fact conditioned on a $200,000 limitation of its duty to indemnify. I'm going to take each of those in order because I think they build on each other. The first issue goes to whether or not there is any admissible evidence in the record that could create a factual dispute as to whether or not Continental gave prior written consent to next level to proceed with the settlement. And what neither party disputes is that following the mediation at which the underlying case settled, Continental sent a draft release to next level asking for its signature. It is that draft release that neither party contends is within the scope of the mediation privilege. And in fact, it does not. It is that draft release in which Continental wrote that it's quote has consented to the settlement of the underlying action in the amount of $6.5 million that creates a triable issue of fact as to whether or not Continental in fact gave prior consent. Council, I have a question for you about that. Let's just say, let's say that we agree with you that the release does provide evidence of consent. The contract requires written consent. So if we were limited in the evidence that we consider to that, how would we actually get to, or how do you, how is there a question of fact regarding whether written consent was provided? Well, I think there are two different responses to that, Your Honor. The first is the actual one. If Continental itself following the settlement writes that it has consented, I think a reasonable inference for a jury is that Continental itself believed it consented consistent with the policy terms and conditions. It wouldn't have written, arguably, that it has consented if it simultaneously believed that proper policy procedure had not been followed. That's number one. Number two, there's a legal issue, and that is that parties would waive condition precedent all the time. It is certainly within Continental's purview, and Next Level in fact argued that this is exactly what happened, that if it did not technically give written consent, that that is neither here nor there. They have waived that argument. There's a third issue as employed routinely. By focusing on the requirement of written and having it work essentially a forfeiture of coverage under California law is inconsistent with what the California Supreme Court would do. There are numerous cases expressly stating that California law disfavors forfeitures, particularly in the context of insurance, and this is exactly one of those cases. So the fact that it was written, the requirement is for written consent, there are two legal theories to address that and one factual problem. So at this point, are you conceding that with the mediation privilege, the email that happened during the mediation is out? I'm sorry, the first part of your question? I apologize. Are you conceding that because of the mediation privilege, the email that was sent during mediation is out? We can't consider that? Yes. Yes, I am. Okay. So... Can I just ask you, counsel, was Continental a party to the mediation? We do not believe that they were a participant to the mediation. Here's why. Continental itself, the claims adjuster, and this is undisputed in the factual record, as the leading up to the mediation, it told Next Level that it had scheduling conflicts and could not attend in person. Subsequent to that, the claims adjuster tested in deposition that the reason she did not attend is because she didn't view that the case presented any significant liability to Continental. Continental was denying its duty to indemnify. So I think in that particular situation where you have a claims adjuster who, at least there's a factual dispute about whether or not she was a participant, particularly when you look at the other cases that have been cited by Continental, those were all situations in which insurance company representatives were there in person at the mediation. This isn't that case. What significance do you draw from that? The significance that I draw from whether or not there's a factual dispute as to Continental's participation in the mediation is that the mediation privilege would not apply until the issue of whether or not Continental was a quote-unquote participant was resolved. And that was not resolved, well, pardon me, from our perspective, there are factual disputes precluding that. So why do you concede that the email during the mediation is out? Fair point, your honor. What I should have said at the beginning of this oral argument is that there were two things that I was assuming for purposes of my argument. One is that that email would be mediation privilege, even though I, for the reasons I've just articulated, I don't think it is. And the second thing that I am assuming for purposes of this argument is that Continental was a defending insurer. And I should have clarified that up front because I did not want to, I think the appeal, the summary judgment order cannot stand even with those two assumptions. Although for the reasons set forth in the briefing, there are disputes surrounding both of them. So with those two assumptions in mind, I would like to address Continental's other arguments regarding the $200,000 limitation. The most important, really the most important argument I think that Continental makes with respect to consent is the argument that its prior consent was somehow limited to $200,000. And I want to take a step back very quickly and distinguish for this panel the difference between the consent provision in an insurance policy, which is separate and independent from the indemnification provisions in a policy. They are certainly related because consent, as Continental has argued, is a condition precedent for coverage. In other words, when you read the cases that Continental cites, you will see over and over again the same fact which is not present here. And that is that insured sometimes go out and settle cases without obtaining any consent or even notifying their carrier that a settlement is in the works. That is not our situation. What Continental says is that there were, that its consent to settle the case was expressly conditioned on a limitation of a separate obligation it had under the policy. And that is its duty to indemnify. The problem with Continental's argument is that first, there's really no evidence that that is actually true. And at best for Continental, it creates a factual dispute as to whether or not Continental expressly told next level that it was conditioning its consent on a limitation of its liability. In fact, if you look at the declaration of Continental's claims adjuster, she actually does not say that. And I can give you the evidentiary site if it's important. What Ms. Friedman actually wrote in her declaration is not that she conditioned consent on a limitation of liability, but that she conditioned her willingness to pay $200,000 on a limitation of Continental's liability under the policy. Those are two different arguments and those are really two different issues. And I submit to this panel that the better rule is that where, as here, an insurance company holds the undisclosed intent to condition its consent on a release of its responsibilities under the separate provision of the policy governing its duty to indemnify. When you say consent, counsel, when you say conditions its consent, what you want to clarify, I take it, is consent to pay. No, consent to settle. Continental's argument is that it never consented to the settlement period and that if it did consent to the settlement, its consent was limited on a release of its duty to indemnify $200,000. And consent, importantly, as Continental argues, really has very little to do with coverage in the sense that it is policy provision that is put in an insurance policy in order to prevent collusive settlements. There's no argument before the court that this settlement was collusive in any way. I don't think anybody was particularly happy with it, but that's a separate issue. So, it is next level's position that the better rule from this insurer has an undisclosed intent to condition its consent to settle on a limitation of a separate obligation under the policy, it had the obligation to say so to next level. It is the only one in a position to have conveyed what both sides think is very, very important information. And there's no evidence that that was ever done. At best, it's a factual dispute about what was said in the discussions leading up to the January 15th mediation. And the reason that rule is so critical when you're discussing consent is that consent is a conditioned precedent to coverage, which means that the insurers take what they understand to be unconditioned consent and go and settle the case. So, they act on what the insurance company does or doesn't say to them regarding consent. And here, it is undisputed that nobody told next level that consent was conditioned on a release of liability. Thank you. Thank you, counsel. We will hear from Ms. Ventrell next. Thank you, your honor. This is Karen Ventrell for Apelli Continental. I'm actually going to cut to the chase and address some of the arguments that Ms. Briggs raised. First, with respect to the state of the record, let's keep in mind that this case had already gone through summary judgment proceedings. We actually had an order from the district court and two orders clarifying that order. And we were a week away before trial was about to begin, and the judge realized there were no factual issues in dispute, and only legal issues were presented. So, the court specifically asked the parties to address four issues. The key issue, the one we're talking about, is whether Continental can be held liable for any more than the $200,000 that it agreed to pay as part of the settlement of the Shafigi action. So, that question placed in issue whatever rights and obligations the parties had regarding the settlement. And it specifically placed in issue any right next level may have had or did not have under the EPL policy to coverage for the $6.5 million settlement. So, that was the state of the record going in. This issue of whether next level was limited to the $200,000 amount that Continental had agreed to pay was at the forefront of pretrial submissions, motions for clarification, orders clarifying, and that was the key issue that the judge asked us to brief, which we did fully. I'm wondering if your reason for highlighting that is to help this court understand what to do with the feature of the district court summary judgment that did not seem to address in any depth the duty to defend issue. Sure. Okay. On the duty to defend issue, let's keep in mind here that this was really not your traditional duty to defend case. When Continental received notice of the claim under the EPL policy, next level already had retained its own lawyers. So, it had asked Continental to consent to its retention of its own lawyers as defense counsel and Continental provided that consent and agreed to pay defense costs consistent with California's CUMA statute, as we refer to it. That's 2860 of the civil code. And so, it did that and that was in the... Whoops, we lost your audio. Yes, Ms. Ventrell? Are you there now? Yep. Okay, sorry about that. I hit my space bar by mistake. Okay. I have one of these elevated keyboards, so it's... Anyway. So, in its April 2015 reservation of rights letter, that's where it sets out its agreement to consent to counsel retained by next level and consent to an agreement to pay what we'll call independent counsel rates under California Civil Code 2860. And it did that. And so, the judge found that Continental did not breach any duty to defend. It found that next level's attorneys and Continental had reached an agreement on hourly rates for defense counsel and also that at the time of mediation, Continental was defending. Indeed, next level's own counsel in the Shafiqi action admitted that at the time of mediation, Continental was defending and understood that Continental would continue to defend if the case did not settle. Well, there was a... I mean, there were features of the defense that were... I mean, at least they're argued as potentially generating additional damages. The delay, the failure to investigate, those features. They're argued to be potentially entitling YS to additional damages. I see what your point is, Your Honor. So, there's an element here that's no longer part of the case, which is that the claim was originally tendered under a director's and officer's policy and also a GL policy, okay? So, and Continental denied any duty to defend or indemnify under those policies. Then next level's broker ultimately tendered to Continental under the EPL policy. So, two things to keep in mind here. In this case, the facts are undisputed that because next level retained its own counsel, Continental agreed to that. Next level was controlling the defense. So, under California law, the duty to defend becomes a duty to pay defense expenses. And under the policy, there's no duty to pay defense expenses until the retention is exhausted. And in practice, obviously, an insurer can't pay defense costs until it gets an invoice for those defense costs. It doesn't just write a blank check. And all of that happened, they got invoices, they had a rate agreement in the fall of 2015, and Continental paid the defense expenses within two weeks. That was before the mediation. So, to the extent there was any purported delay, it had no bearing whatsoever on the mediation or the settlement of the claim. So, it's somewhat disingenuous to argue that there was some additional damages. I mean, next level had retained its own counsel, and there was nothing that Continental could have done in between all of that or differently than what it had done to perform what it was required to do under California law, which was to pay independent counsel rates. Did the insurance company pay for defense costs that were incurred before the EPL policy, before coverage was accepted under the EPL policy? So, the defense costs that were incurred before then were actually within the retention. So, I believe the answer is no, it did not, but it had no obligation to under the policy. But were those defense costs counted, I guess, towards the insurance company's obligation and the retention? They were, they were. So, if I could go back to the one issue that Ms. Briggs raised about waiver, and, you know, waiver is a very loaded term, I would say. The district court found on the record that there was an agreement between Next Level and Continental, pursuant to which Continental had agreed to pay $200,000, and in exchange, Next Level would release its claim for indemnity coverage above the $200,000 amount under the EPL policy. This was, I mean, the district court found that was implied. Yes, and implied, implied is the key term, your honor, I agree. Implied, because the conduct itself, so this is a case about what was not said speaks volumes. We have very experienced counsel here, Next Level had its own counsel defending, had its own counsel, it had an insurance coverage lawyer, communicating with Continental. They go into the mediation, and I'm not going to get into mediation. Counsel, before you go farther down that path, I hope you will address the argument about due process, that the court sort of created this out of whole cloth, that it wasn't argued, but it appeared in the judgment, and that there was implied, and of course, the argument is the plaintiff, Wyeth Garments, could never address that. I will be happy to, your honor. It's in terms of the implied, so there were no factual disputes about the conduct, okay? The conduct is established in the record, in terms of what the parties did, right? And so, when Next Level tells Continental... To the extent that it was ever at bar, okay? It's established, but this matter wasn't at bar. It hadn't been raised, I mean, it hadn't been, the argument couldn't be, there was no responsive time for the plaintiff here to address it. Okay, and that I will address, your honor, because Continental repeatedly argued that the agreement was, Continental would pay $200,000 in consenting to settle, in exchange, like every other settlement, it gets a release of claims, a release necessarily implies that the party releasing is waiving its claims. All claims. It's waiving its claims. In this case, the argument is, they didn't waive their duty to defend claim. True, that is true. What they waived was the right to recover any more than the $200,000, so Continental has argued from day one, it pled this in its pleadings, that there was an agreement limiting Next Level's recovery for any indemnity coverage to the $200,000. That was argued extensively in the summary judgment proceedings, and the proceedings and submissions before the pretrial conference. I'm sorry to interrupt you, but, I mean, you were arguing below that there was no obligation at all because you hadn't consented. True, that's absolutely true. Inconsistent, so as to Judge Cook's point about, you know, it seems like the district court comes up with a new argument that the parties didn't raise or brief, and Rule 56 doesn't allow that, so I don't understand your response that this issue was front and center below, when your argument was really, we have no obligation whatsoever because we didn't consent and you can't prove otherwise. And I'd like to redress that, please. So first round of summary judgment proceedings, no question, we argued there was no consensus at all. That's what we argued. We lost on that. That was the record. So going in, the judge then asked us to brief certain issues. So we were constrained by the record as of that time, the ruling as of that time, that there was consent to settle. That's what he said. And then the question he framed was, was next limit, excuse me, was next level limited to recovering $200,000. And the limitations that comprised, if you will, that gave sufficient opportunity for next level, which they did, they argued in their briefs, and we argued repeatedly that there was a release and that the content of that release says specifically that they are releasing, waiving, discharging claims for identity coverage. That's in the, at volume eight of the record at 1706 and 08 and 09 and 10, we've made that argument. So while it is true that we did not argue implied waiver as a concept and the judge did not warn next level that that's where he was going, I don't think the judge has any obligation to do any more than he did, which was to highlight and specifically identify what he was looking at, which is, was next level limited to recovering $200,000. And then the question is why? Why were they limited? Counsel, of course the court is limited to a question, but that doesn't mean that we don't look for analysis in support and consideration of all the arguments. So we didn't see consideration of the independent argument that regarding the duty to defend that failure to consider that and the attendant bad faith claim. We didn't see that in the judgment. Okay. So on the duty to defend claim, he held that basically there was no, the facts did not support any argument that there was a breach of a duty to defend because the duty to defend here was a duty to pay and that was done. And so he didn't find that there was any delay or if there was a delay that it had any effect. There's no breach of contract claim, obviously without a breach and these were on undisputed facts. We were a week away from trial and he decided there were no factual issues in dispute. And this, you know, we had already had his round of summary judgment proceedings and we're going for a second round where we each got three briefs. So there was, there was no dispute as to what's in the record. But you heard Ms. Briggs cite a litany of facts, factual issues. No, we say the litany of facts that are on it. Really. Sorry. Okay. Counsel didn't argue that this is all undisputed. Your learned opponent did not argue that. That's what they're arguing now. Yes. But we proceeded again in the trial court on undisputed facts. And I would like to get to this question of whether next levels conduct, even if there was an agreement, which is what the district court ruled. Okay. He failed to rule that they repudiated that agreement. And the repudiation is expressly demonstrated by the fact that they sued in this case to recover the $6.5 million settlement. So there's no question that even if there was an agreement that's supported by the record, the record also supports that they repudiated that agreement. So our contention has been that they cannot take and cherry pick out of that draft release one sentence in a draft that was provided 11 days after the settlement. And that that statement should be deemed to satisfy a condition precedent to their breach of contract claim. Counsel, isn't there a question of fact as to whether or not Next Level was told that the Continental was only willing to contribute the $200,000? No, Your Honor. No, there's not. No, they've never, there's, the record is clear. There's no dispute. Next Level never asked Continental to pay more under the EPL policy. There was no demand for limits either at or within the EPL policy. That is undisputed. I'd like to reserve my time. Well, you actually don't have another turn. So, oh, okay, then I'll keep going. Okay. I didn't realize that. So on the next issue, I think there's also a fundamental disconnect here, because Next Level has been arguing that parties go into settling a dispute with no expectation of a release. So somebody pays, but they don't get anything in exchange for that, which is a release. When you settle a case, you do so to buy peace and certainty. And here, if what Next Level is proposing is allowed to occur, I would urge you that this will disincentivize insurers who are involved in most liability cases from agreeing to settle or consenting to settle. And, I mean, the way that this usually works, as I said, is you go into settlement negotiations, and you just don't say it every time you write something. Oh, and by the way, remember that this is going to be subject to a release of all your claims, and you just don't do that. You go back and forth with offers and demands, and everybody understands a release will be forthcoming afterwards. And then the other disconnect here is that there is no question under California law that Next Level, setting aside all the other stuff, still have the burden to show what, if any, part of this settlement was for covered loss. And in their briefs, they argue that they didn't have that burden. They argue that the loss provision is essentially an exclusion. Well, the California Supreme Court has already settled that issue. In the Waller case, the California Supreme Court held that the policyholder has the burden of showing that the claim falls within the insuring agreement and the definitions that are used of terms used in that insuring agreement. So, applying Waller here, as courts have done in the Mettle case that we cited and the Tana case that we cited, have said that that means that Next Level had to show that the settlement was not paid for things that an insurer is obligated to pay or compensate as part of an employment contract, like unearned compensation and stock and employment-related benefits. Can you still hear me? Yes. Thank you. So, that's the other fundamental disconnect. Next Level just doesn't get $2 million without meeting its burden to show what part of the settlement, if any, was covered. And the District Court didn't address any of that, right? No, he did. He absolutely did. He said that the relief Shafigi sought was for stock, was for compensation, and so forth. He also addressed the argument Next Level made with respect to the breach of fiduciary duty claim. That claim, according to Next Level's attorneys in the litigation, was assessed as having almost no value whatsoever. And Judge Otero eventually ruled that that claim also did not seek any covered loss. So, what he did was to say that none of the settlement was for covered loss, but that Continental's agreement to pay $200,000 would essentially satisfy any indemnity obligation that it might have had. And remember, that $200,000 was for an estimate of what it would cost to defend the case going forward. So, it's sort of a misnomer to call it indemnity, although that's sort of how we would phrase it, because it's clearly not paying for defense costs. Those haven't been occurred yet. So, it's categorized as satisfying an indemnity obligation, and that's how he characterized it. So, you've just gone over time. I have one more question, if Judge Ward's level. Oh, please go ahead, Judge Sicker. So, sort of looking back at my notes here, my recollection is that in the first summary judgment order, the district judge said, the district judge denied your client's motion for summary judgment on the consent issue. On the first round, yes, Your Honor, on the consent issue. But the district judge didn't then grant summary judgment on that issue to next level, because they hadn't moved on that. So, my question is, since the second round happened right before trial, what were the parties going to do at trial with regard to what happened in mediation and consent? Were you going to present evidence on that point? No. So, the trial that I was speaking about is the trial in the coverage action. So, in the coverage action, no, there was no factual dispute according to the judge, and that's where we were going in. Maybe I'm not understanding your question. I apologize. No, I think you did. Okay. Thank you. All right. Thank you, counsel. Ms. Briggs. Thank you. In no particular order, I'd like to address some of the arguments that were just made. First, with respect to the duty to indemnify for the breach of fiduciary duty, Continental has repeatedly argued to this court that there is no evidence as to what the settlement in the underlying action, the $6.5 million, what it was for, what claims it was for. That is demonstrably incorrect. In summary judgment, we submitted the declaration of defense counsel explaining what the settlement in part was for, and what he said was that millions were paid in part for the breach of fiduciary duty claim. Now, why is that important? Because breach of fiduciary duty is expressly under Continental's EPL policy. That is an expressly covered claim. So, the court then said, well, it's excluded because there are exclusions within the definition of loss, which is what Continental pays for. There are exclusions, and you, next level, have to show that the settlement did not fall into an exclusion. In other words, you, next level, must negate each and every exclusion within the definition of loss. That is plainly inconsistent with California Supreme Court law. The AIDIN case, A-Y-D-I-N, is the controlling statement on this issue of burden of proof. All of the cases that Continental cites are pre-AIDIN. Okay, so the Waller case that it relies on did not even address the issue, number one, and number two happened before AIDIN. AIDIN clearly said, and by the way, Continental does not even mention AIDIN in its brief, and what the Supreme Court said in that case, which is so relevant here, is that it is the function of language in an insurance policy that determines who bears the burden of proof, so where the function of the language is exclusionary, Continental bears the burden of proof on it. Secondly, I'd like to address the duty to defend, which was right with disputed factual issues, and that is exactly what we argued. There were issues as to whether or not accepted the tender of defense. By the way, Continental repeatedly argues that the claim was only tendered under a DNO policy and a general liability policy. That is not true. In the first round of summary judgment, the court expressly found that the claim had been tendered under, quote, any and all available policies, which was the language in the letter. Continental did not challenge that finding here on appeal, so he expressly found that it was tendered under all available policies. There are real factual issues about whether or not... Counsel, what's the significance of that, the tendering? The significance goes to breach, Your Honor. I know. What damages do you, I mean, what damages, additional damages, could you foresee that you have been short, short changed? I mean, as Counsel said, you know, they hopped right in. They were there monitoring the mediation. I mean, where are you seeing the error here? It could be, you know, harmless error. Sure. Although notably, in the cases that Continental relies on, there were other carriers who were already defending. Okay, so when you look at those cases, that's a case where there were multiple insurers and somebody else had already picked up the defense. That is the true harmless error situation. Here, California law, in this particular situation, it is not harmless error because an insurer that picks up the defense of its insured 150 days after the tender is deemed to have waived its right to, for example, pay only $225 an hour for counsel. And incidentally, the reason Next Level had had to retain... So the additional damages that could be, if there were a decision that an issue of fact or multiple issues of fact affect this appeal, you get deeper fees? Correct. We would get the delta on the defense fees and costs that Continental refused to pay. That is the remedy. That's it. What else? That's it? Not insignificant. I understand. Yeah. I see that I'm out of time. All right. Thank you very much, counsel, for your able argument today. YS Garments versus Continental Casualty Company will be submitted and the session of the court is adjourned for today. Thank you, Your Honor.
judges: Cook, Wardlaw, Hunsaker